# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

BILL BAILEY,

        Appellant,

    v.

DEPARTMENT OF THE ARMY,

        Agency.

DOCKET NUMBER
DA-0432-16-0360-I-1

DATE: February 21, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

Jennifer Duke Isaacs, Atlanta, Georgia, for the appellant.

Aaron T. Noble, Corpus Christi, Texas, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

## REMAND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed the agency's action demoting him for unacceptable performance pursuant to 5 U.S.C. chapter 43. For the reasons set forth below, we GRANT the petition for review, VACATE the initial decision, and REMAND the appeal to the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

regional office for further adjudication consistent with the U.S. Court of Appeals for the Federal Circuit's decision in *Santos v. National Aeronautics and Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021).

## BACKGROUND

¶2 The appellant, a Sheet Metal Mechanic (Aircraft) at the agency's Corpus Christi Army Depot, was demoted based on unsatisfactory performance effective April 17, 2016. Initial Appeal File (IAF), Tab 2 at 14-16, Tab 9 at 45. He was reduced in pay and grade from WG-3806-10 to WG-3806-08 following his completing a performance improvement plan (PIP) that lasted approximately 90 days. IAF, Tab 2 at 8-16, Tab 9 at 45. Prior to his demotion, the appellant had been in grade as a WG-3806-10 for over 9 years. IAF, Tab 16 at 4. The appellant is rated on his performance in four critical elements. IAF, Tab 9 at 72-73. The PIP was based on the appellant's unsatisfactory performance for Critical Elements 1 (Technical Competence) and 4 (Responsibility/Dependability) during the March 1, 2015, through February 29, 2016 rating period. *Id.* at 70-75. The agency found his performance to be deficient for subelements 1(a) and 4(a), which involved meeting or exceeding weekly and monthly work schedules and accomplishing assignments within established time standards. *Id.* The agency did not allege any issues with quality or other aspects of the appellant's work. Prior to being placed on the PIP, the appellant had been repeatedly counseled to improve the speed at which he completed his work. *Id.* at 70-71; IAF, Tab 16 at 4.

¶3 The PIP notice documented in detail the appellant's observed performance deficiencies. IAF, Tab 9 at 67-68. The PIP notice further informed the appellant that his supervisor would assess his performance pursuant to the performance standards for the next 60 days. *Id*. at 68. The PIP notice also stated that management would conduct weekly meetings with the appellant to review work assignments and to discuss recommended improvements. *Id.* at 75-78. The record shows that the appellant met with his supervisor approximately once a

week during the PIP period. *Id.* at 76-78; IAF, Tab 16 at 4-5. The PIP was originally implemented from August 10 to October 9, 2015. IAF, Tab 9 at 67-68. Later, the agency extended the PIP from November 19 to December 18, 2015. IAF, Tab 16 at 5. At the end of the second PIP period, the agency determined that the appellant's performance was still unacceptable in the two critical elements because he failed to complete his assigned tasks in a timely and cost-effective manner. IAF, Tab 9 at 60-65. The agency demoted the appellant effective April 17, 2016. *Id.* at 45-49.

¶4    The appellant timely appealed his demotion to the Board . IAF, Tab 1. The appellant admitted that he did not meet the timeliness requirements for subelements 1(a) and 4(a) during the PIP period. IAF, Tab 25 at 5-6. However, he asserted that he was not provided a reasonable opportunity to improve under the PIP and that the agency's system used to track his performance on timeliness was "not designed to be used in this manner" and could contain errors. *Id.* at 6-7.

¶5    The administrative judge decided the appeal on the pleadings after the appellant withdrew his request for a hearing. IAF, Tabs 20-21, Tab 29, Initial Decision (ID) at 1. In an initial decision, the administrative judge found that the agency established that its performance standards were objective, reasonable, and communicated to the appellant in advance; that the appellant was warned that his performance was unacceptable; and that he was given a reasonable opportunity to improve his performance. ID at 11-16. He further found that the record did not support the appellant's claims that the agency assigned him more difficult tasks and that the agency gave him insufficient guidance during the PIP. ID at 14-16. The administrative judge concluded that the agency showed that the appellant's performance was unacceptable during the PIP. ID at 16-17. He rejected the appellant's argument regarding the tracking system as speculative and concluded that nothing on the face of the agency's logs containing timeliness data would suggest they were unreliable. ID at 8-9.

¶6 The appellant also asserted an affirmative defense of whistleblower reprisal. IAF, Tab 25 at 4-6. In early 2014, he filed complaints with the agency's Office of Inspector General (OIG) after reporting to his immediate supervisor that a fellow employee was not reporting for work on a regular basis. IAF, Tab 1 at 6-7, 14, Tab 7 at 5-6, Tab 13 at 2. He additionally reported that other employees in his shop failed to keep track of their tools and consumables, first to his immediate supervisor and then to another manager. IAF, Tab 1 at 7-8, 14, Tab 7 at 6, Tab 9 at 55-59, Tab 13 at 2. The appellant argued that the agency had not taken similar administrative action against other employees who had difficulty in completing their work in a timely manner, and that this difference in treatment showed that the agency sought to unfairly punish him for his protected activity under 5 U.S.C. § 2302(b)(8) and (b)(9)(C). IAF, Tab 1 at 16-17.

¶7 The administrative judge found that the appellant failed to establish his affirmative defense of reprisal for whistleblowing and other protected activity. ID at 17-21. The administrative judge found that the appellant proved by preponderant evidence that he made protected disclosures to agency managers and engaged in a protected activity by filing a complaint with the agency's OIG. ID at 18-19. He further found that the appellant established that his protected activities were a contributing factor in the agency's decision to demote him because of unacceptable performance during a PIP. ID at 19; *see* 5 U.S.C. § 2302; *Hudson v. Department of Veterans Affairs*, 104 M.S.P.R. 283, ¶ 15 (2006). He concluded, however, that the agency met its burden to show by clear and convincing evidence that it would have taken the same action in the absence of the disclosures and other protected activity by providing strong evidence justifying the demotion. ID at 19-21. Accordingly, the administrative judge affirmed the agency's demotion action. ID at 21.

**DISCUSSION OF ARGUMENTS ON REVIEW**

¶8        At the time the initial decision was issued, the Board's case law stated that, in an appeal of a performance-based action under chapter 43, the agency must establish the following by substantial evidence:[2]  (1) the Office of Personnel Management approved its performance appraisal system and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) the appellant's performance standards were valid under 5 U.S.C. § 4302(b)(1);[3] (4) the agency warned the appellant of the inadequacies of his performance during the appraisal period and gave him a reasonable opportunity to demonstrate acceptable performance; and (5) the appellant's performance remained unacceptable in one or more of the critical elements for which he was provided an opportunity to demonstrate acceptable performance.  *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 5 (2010).

<u>The appellant has not shown that the administrative judge made erroneous factual findings.</u>

¶9        The appellant argues that the administrative judge erred in finding that he failed to identify any similarly situated employees who also had been subject to a performance-based action.  Petition for Review (PFR) File, Tab 1 at 10-11.  He asserts that his immediate supervisor supervised at least 13 additional persons who exceeded their allotted hours for performing certain tasks, yet he was the only person in his work unit who was placed on a PIP.  *Id.*  He asserts that the administrative judge failed to consider as similarly situated several employees

---

[2] Substantial evidence is the "degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree."  5 C.F.R. § 1201.4(p).

[3] As a result of the enactment of the National Defense Authorization Act for Fiscal Year 2018, Pub. L. No. 115-91, § 1097(d)(1), 131 Stat. 1283, 1619 (2017), the criteria that were set forth in 5 U.S.C. § 4302(b)(1) at the time the initial decision was issued now appear in 5 U.S.C. § 4302(c)(1).

who were temporarily assigned to his unit, even though those employees were working on the same or similar projects with the same performance expectations under the same supervisor. *Id*.

¶10    We find that the appellant has mischaracterized the administrative judge's analysis. Although other employees in the same work unit exceeded their allotted hours for the same or similar projects, no other employee did so to the extent that the appellant did. IAF, Tab 17 at 27-29. In that respect, the administrative judge concluded, the appellant had no true comparators. ID at 20. For example, Employee 2, the colleague with the third-highest number of overrun hours between January 1, 2015, and July 6, 2016, accrued slightly more than half the number of the overrun hours that the appellant amassed. IAF, Tab 17 at 27-28. The record also shows that the agency did not fail to act regarding the other employees with significant numbers of overrun hours. *Id.* at 27-29. For example, Employee 2 received a failing rating during the March 1, 2015, to February 29, 2016 rating period, when the appellant likewise received a failing rating. *Id.* at 64-69; IAF, Tab 9 at 70-73. Although Employee 2 left work soon thereafter when he incurred a compensable injury, the appellant's immediate supervisor stated that Employee 2 would be placed on a PIP once he returned to full duty. IAF, Tab 17 at 27-28, 65. Employee 3, who also accrued a high number of overrun hours, retired after he received a memorandum of warning regarding slow work, and the remaining employees either were reassigned to different supervisors or returned to their original work units, and those with higher numbers of overrun hours received letters of warning. *Id.* at 27-29. Additionally, most employees under the appellant's immediate supervisor *did not* incur overrun hours. There were approximately 30 employees in the appellant's work unit, and only 13 of those incurred overrun hours. IAF, Tab 24 at 11.

¶11    The appellant argues that the administrative judge erred in determining that there was nothing more that the agency could have done to assist him in improving his performance. PFR File, Tab 1 at 11. He asserts that the agency

could have provided training or assigned another employee to assist him in learning to perform his assigned tasks more quickly; rather, the agency chose to watch him fail. *Id.* The appellant has not identified any evidence in the record that would support his conclusions. To the contrary, the administrative judge described in detail the agency's efforts to provide the appellant with a reasonable opportunity to improve his performance. ID at 14-16. As the administrative judge correctly pointed out, the assistant that the appellant requested was unavailable because his expertise was needed elsewhere, and in any event, the appellant encumbered a journeyman-level position and should have been able to work independently or even lead a team of less-experienced personnel. ID at 15; IAF, Tab 9 at 108-09, Tab 16 at 4, Tab 24 at 9-11. Moreover, the record shows that the appellant received frequent assistance from his immediate supervisor, including coaching on time management, and his work assignments during the PIP were "no different from the type of work he had been performing before the PIP," neither measurably easier nor more difficult. IAF, Tab 9 at 76-78, Tab 24 at 9-10; *see Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶¶ 7-18, 33 (2013) (finding that the agency presented sufficient evidence to show that the appellant's performance was unacceptable in certain critical elements, notwithstanding her claims that she was not provided enough time to demonstrate acceptable performance, her assignments during the PIP were out of the ordinary, and the agency provided her with "minimal to nonexistent assistance").

¶12     Next, the appellant argues that the administrative judge erred in finding that he received less difficult assignments during the PIP, which should have made it easier for him to perform his duties without incurring overruns. PFR File, Tab 1 at 12; ID at 15. The appellant's immediate supervisor stated in his declaration that he assigned the appellant work at the WG-8 level, rather than work at the WG-10 level, during the PIP. PFR File, Tab 1 at 12; IAF, Tab 24 at 9-10. The appellant asserts that work at the WG-8 level may be easier in theory, but those assignments did not represent his typical workload and in some cases included

unfamiliar tasks, such as the assignment he received to upgrade the cockpit door posts for an aircraft. PFR File, Tab 1 at 12; IAF, Tab 9 at 61-62.

¶13    Here, the appellant correctly notes that the administrative judge credited the immediate supervisor's declaration "wherein he stated that the appellant was actually provided easier work than his job-level demanded during the PIP period." ID at 15. The declaration, however, is considerably more nuanced than the initial decision suggests. In the declaration, the appellant's immediate supervisor states that he assigned the appellant WG-8, and not WG-10, level work because he "wanted [the] Appellant to excel, and because due to difficulties getting him to do WG-10 work before the PIP, he had not been performing that level of work for some time." IAF, Tab 24 at 9-10. The supervisor added that the PIP work assigned to the appellant "was no different from the type of work he had been performing before the PIP; *it was not measurably easier or more difficult*." *Id.* at 10 (emphasis added). He explained, "WG-10 work encompasses all WG-8 work and adds more advanced functions. Even a WG-10 mechanic newly assigned to WG-8 work would not be facing unfamiliar tasks, because going from WG-10 to WG-8 level work simply removes tasks." *Id.* The appellant has not identified any evidence in the record that would show that his supervisor's explanation in the declaration is inaccurate. We find that the declaration and the record as a whole support the administrative judge's decision to affirm the demotion, and any error in the initial decision's description of the declaration is not of sufficient weight to change the outcome.

The agency gave the appellant a reasonable opportunity to demonstrate acceptable performance.

¶14    The appellant argues that, in relying on the immediate supervisor's declaration, the administrative judge erroneously determined that he was given a reasonable opportunity to improve his performance during the PIP. PFR File, Tab 1 at 12-14. The appellant asserts that the administrative judge gave too much emphasis to the following facts: a 90-day PIP is relatively long, the appellant

was afforded the opportunity to work on several different projects during the PIP, and he was assigned work at the WG-8 level. *Id.* at 13; ID at 14-15. The appellant asserts that the agency offered him sufficient time in which to improve his performance, but inadequate assistance in doing so. PFR File, Tab 1 at 13. He further asserts that the administrative judge gave too much weight to an "unsupported statement" in his immediate supervisor's declaration regarding the nature of his duties during the PIP. *Id.* His duties at the WG-8 level were not necessarily easier, he explains, because they included tasks he had not previously or regularly performed. *Id.*

¶15    As stated, to prevail in an appeal of a performance-based action, the agency must inter alia establish by substantial evidence that it gave the appellant a reasonable opportunity to demonstrate acceptable performance. *Lee*, 115 M.S.P.R. 533, ¶ 5. In determining whether an agency has afforded an employee such an opportunity, relevant factors include the nature of the duties and responsibilities of the employee's position, the performance deficiencies involved, and the amount of time which is sufficient to enable the employee with an opportunity to demonstrate acceptable performance. *Id.*, ¶ 32. The administrative judge considered these factors. ID at 14-16. The Board has determined that PIP periods of shorter duration were sufficient to afford employees a reasonable opportunity to improve. *Towne*, 120 M.S.P.R. 239, ¶ 10 (finding that a 7-week PIP sufficed); *Melnick v. Department of Housing & Urban Development*, 42 M.S.P.R. 93, 101 (1989) (finding that a 30-day PIP sufficed), *aff'd*, 899 F.2d 1228 (Fed. Cir. 1990) (Table). In addition, as we have stated above, the immediate supervisor's declaration clearly explains the duties to which the appellant was assigned during the PIP. Although the appellant contends that the supervisor's declaration is "unsupported," he has failed to identify anything in opposition to the declaration other than his bare assertion that his PIP assignments differed appreciably from those he had been given prior to the PIP. PFR File, Tab 1 at 13; *cf. Betters v. Federal Emergency Management Agency*,

57 M.S.P.R. 405, 408-10 (1993) (holding that the agency denied the appellant a reasonable opportunity to improve when it changed his performance plan, first during a detail and then during the PIP). We find the appellant has not provided a sufficient basis to disturb to administrative judge's finding that he was afforded a reasonable opportunity to improve.

The agency showed by clear and convincing evidence that it would have demoted the appellant in the absence of his whistleblowing and other protected activity.

¶16      Finally, the appellant argues that the administrative judge erred in determining that the agency established by clear and convincing evidence that it would have taken the same action regardless of his whistleblowing and other protected activity. PFR File, Tab 1 at 14-17. In an appeal such as this one, the agency's action may not be upheld if the appellant shows that the decision was based on a prohibited personnel practice. 5 U.S.C. § 7701(c)(2)(B). The appellant alleged that the agency's action was in retaliation for his having made protected disclosures and for having engaged in other protected activity by disclosing information to the agency's OIG. IAF, Tab 1 at 6-8, 14, Tab 7 at 5-6, Tab 9 at 55-59, Tab 13 at 2. To retaliate on such a basis is to commit a prohibited personnel practice under 5 U.S.C. § 2302(b)(8) or (b)(9)(C).

¶17      Once the agency establishes that it properly took a performance-based action, the appellant then must show by preponderant evidence that he engaged in whistleblowing activity under 5 U.S.C. § 2302(b)(8) or in other protected activity under 5 U.S.C. § 2302(b)(9) and his disclosure or other activity was a contributing factor in the agency's personnel action. 5 U.S.C. § 1221(e)(1); *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 13 (2015); *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 19 (2013); 5 C.F.R. § 1201.56(b)(2)(i)(C). If an appellant meets this burden, the burden shifts to the agency to establish by clear and convincing evidence that it would have taken the same action in the absence of the protected disclosure or protected activity. 5 U.S.C. § 1221(e)(2); *Alarid*, 122 M.S.P.R. 600, ¶ 14; *Shibuya*, 119 M.S.P.R.

537, ¶ 32.  In determining whether the agency has met this burden, the Board will consider all the relevant factors, including the following factors ("*Carr* factors"): (1) The strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials involved in the decision; and (3) any evidence that the agency takes similar actions against employees who did not engage in whistleblowing or other protected activity, but who are otherwise similarly situated.  *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11; *see also Carr v. SociaSecurity Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).[4]  The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole.  *Phillips v. Department of Transportation*, 113 M.S.P.R. 73, ¶ 11 (2010).  The Board considers all the evidence, including evidence that detracts from the conclusion that the agency met its burden.  *Soto*, 2022 MSPB 6, ¶ 11; *see also  Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

¶18  The appellant argues that the administrative judge erred in his analysis of the second and third *Carr* factors, which examine the agency's motive to retaliate and its treatment of similarly situated persons who did not engage in whistleblowing or other protected activity.  PFR File, Tab 1 at 16.  Regarding the second *Carr* factor, the administrative judge found that the appellant had not offered any evidence of retaliatory motive.  ID at 20.  The appellant argues that the administrative judge ignored his history of complaints and disclosures

---

[4] Historically, the Board has been bound by the precedent of the U.S. Court of Appeals for the Federal Circuit on these types of whistleblower issues.  However, pursuant to the All Circuit Review Act, Pub. L. No. 115-195, 132 Stat. 1510, appellants may filed petitions for judicial review of Board decisions in whistleblower reprisal cases with any circuit court of appeals of competent jurisdiction.  *See* 5 U.S.C. § 7703(b)(1)(B).  Therefore, we must consider these issues with the view that the appellant may seek review of this decision before any appropriate court of appeal.

alleging that his immediate supervisor failed to ensure that employees properly managed tools and expendables. PFR File, Tab 1 at 16. These complaints and disclosures, the appellant argues, reflected poorly on his immediate supervisor and gave him motive to retaliate. *Id.*

¶19 The appellant's argument relies on speculation. Indeed, the appellant has identified no evidence in the record that would counter his immediate supervisor's declaration, which dispelled both a personal and professional motive to retaliate. In the declaration, the supervisor flatly denied any retaliatory motive based on the appellant's disclosures "because neither of those disclosures reflected badly on me or caused any issues." IAF, Tab 24 at 12. The supervisor stated that, when the appellant voiced his concerns about the matters disclosed, he "did not mind his taking them up the chain of command or to the Inspector General, because these were his rights." *Id.* Moreover, the supervisor explained that he lacked the authority to act on the appellant's concerns about the management of tools and expendables "since they were based on a misreading of applicable rules" and that he already had acted on issues related to one employee's absenteeism by the time the appellant reported it. *Id.* He also explained that he was never disciplined or counseled as a result of the appellant's contact with OIG and that he was "unaware of any employees who were." *Id.*[5]

¶20 Regarding the third *Carr* factor, the appellant asserts that the administrative judge erred in determining that similar administrative actions had been taken against other poorly performing employees. PFR File, Tab 1 at 16-17. The administrative judge cited other administrative actions that had been taken against poor performers assigned to the appellant's work unit, which included a PIP

---

[5] We have found that those responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, as the criticism reflects on them in their capacities as managers and employees. *Wilson v. Department of Veterans Affairs*, 2022 MSPB 7, ¶ 65; *Smith v. Department of the Army*, 2022 MSPB 4, ¶¶ 28-29. However, there is no evidence in the record to support this theory.

pending one employee's return to duty and letters of warning issued for other employees with significant overrun hours. ID at 20-21. The administrative judge concluded that the agency proved that it had acted when other employees performed at an unacceptable level. *Id.* The appellant argues that the administrative judge's conclusion is in error because the demotion action affected him financially, unlike the formal warnings issued to other employees. PFR File, Tab 1 at 16-17. The appellant has not, however, identified any evidence that would place him on the same footing as those other employees. The record shows that the appellant's overrun hours were nearly double those of any other employee who accrued overrun hours. The appellant accrued 590.6 overrun hours. IAF, Tab 17 at 27. The nearest comparator, a detailee whose permanent supervisor received a memorandum for the record regarding the overruns, accrued 309.7 overrun hours. *Id.* Employee 2, referenced supra, accrued 302.2 overrun hours. *Id.* at 27-28. Employee 3 accrued 267.9 hours. *Id.* at 28. The appellant's supervisor placed memoranda for the record in the files of the other employees who had amassed 200 or more overrun hours, and he spoke with the supervisors of employees who had accrued smaller overruns. *Id.* The record shows that the administrative judge weighed the *Carr* factors in the aggregate and found, based on all the record evidence, that it clearly and convincingly supports the conclusion that the agency would have demoted the appellant in the absence of any whistleblowing disclosure or other protected activity.

Remand is required in light of *Santos*.

¶21   Although the administrative judge correctly cited the Board's precedent setting forth the relevant legal standard for chapter 43 actions at the time he issued his initial decision, subsequent to the initial decision, the Federal Circuit held for the first time that, to support such an action, an agency "must justify institution" of a PIP by showing that the employee's performance was unacceptable prior to the same. *Santos*, 990 F.3d at 1360-61. Therefore, to defend an action under chapter 43, an agency must now also prove by substantial

evidence that the appellant's performance during the appraisal period prior to the PIP was unacceptable in one or more critical elements. *See Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 14. The Federal Circuit's decision in *Santos* applies to all pending cases, including this one, regardless of when the events took place. *Id.*, ¶ 16. Although the agency here introduced evidence indicating that the appellant was counseled for his performance issues prior to his placement on the PIP, *e.g.*, IAF, Tab 9 at 71, the parties nonetheless were not afforded an opportunity before the administrative judge to address the modified legal standard set forth in *Santos*. We therefore remand this case for further adjudication of the appellant's demotion. *See Santos*, 990 F.3d at 1363-64 (remanding the appeal for further proceedings under the modified legal standard); *see also Lee*, 2022 MSPB 11, ¶ 16 (remanding the appellant's chapter 43 appeal because the parties were not informed of the modified standard set forth in *Santos*).

¶22      On remand, the administrative judge shall accept evidence and argument on whether the agency proved by substantial evidence that the appellant's performance prior to the PIP was unacceptable. The administrative judge shall hold a supplemental hearing if appropriate. The administrative judge shall then issue a new initial decision consistent with *Santos*. If the agency makes the additional showing required under *Santos* on remand, the administrative judge may incorporate his prior findings on other elements of the agency's case in the remand initial decision. However, regardless of whether the agency meets its burden, if the argument or evidence on remand regarding the appellant's prior performance affects the administrative judge's analysis of the appellant's affirmative defense of whistleblower reprisal, he should address such argument or evidence in his remand initial decision. *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).

## ORDER

¶23    For the reasons discussed above, we grant the appellant's petition for review and remand this case to the regional office for further adjudication consistent with *Santos*.


FOR THE BOARD:                                   _____/s/ for_____
                                                 Jennifer Everling
                                                 Acting Clerk of the Board
Washington, D.C.